UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

SCHIFFFAHRTSGESELLSCHAFT                                        CIVIL ACTION
  MS N SCHELDE MBH & CO. KG

VERSUS                                                         NO.  16-10726

POLA MARITIME LIMITED and                                      SECTION  "N"
  POLA 5 SHIPPING LIMITED, *in personam*

<u>**ORDER AND REASONS**</u>

      Presently before the Court are the "Motion to Vacate and for Damages due to Wrongful Attachment" filed by Defendant  Pola 5 Shipping Limited ("Pola 5") (Rec. Doc. 10) and the "Motion for Leave to File Jurisdictional Discovery" filed by Plaintiff (Rec. Doc. 19).  Having carefully considered the parties' submissions (Rec. Docs. 1, 10, 17, 18, and 28), the record in this matter, and applicable law **IT IS ORDERED** that Pola 5's motion to vacate and for damages is **DENIED** for the reasons stated herein.  **IT IS FURTHER ORDERED** that Plaintiff's motion regarding discovery is **GRANTED** to the limited extent stated herein.

**A.**    <u>**Motion for Vacatur and Damages for Wrongful Attachment**</u>

      With its motion, Pola 5 seeks vacatur of the attachment of the M/V POLA ONEGA previously granted at Plaintiff's request, pursuant to Supplemental Admiralty Rule B ("Rule B"), as security for Plaintiff's (unrelated) arbitration claims against Defendant Pola Maritime Limited ("Pola Maritime").[1]  A Rule B maritime attachment of property is authorized when a plaintiff satisfies the

---

[1]    It is the Court's understanding that those claims are presently pending in an London arbitration proceeding. See Rec. Doc. 1.

applicable filing, notice, and service requirements and shows that: (1) the plaintiff has a valid prima facie admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property may be found within the district; and (4) there is no statutory or maritime law bar to the attachment. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2nd Cir.2006)(abrogated on other grounds by *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2nd Cir. 2009)).[2]  *See also* Fed. R. Civ. P., Supp. Adm. Rule B. Following a Rule B attachment, Supplemental Admiralty Rule E(4)(f) ("Rule E") allows a defendant to contest, and move to vacate, the attachment.  *See* Fed. R. Civ. P., Supp. Adm. Rule E(4)(f); *Williamson v. Recovery Ltd. Partnership*, 542 F.3d 43, 51 (2nd Cir. 2008), *cert. denied*, 555 U.S. 1102 (2009).  The attachment must be vacated if the plaintiff fails to sustain his burden of showing that the requirements of Rules B and E are satisfied. *Aqua Stoli Shipping Ltd.*, 460 F.3d at 445;  *see* Fed. R. Civ. P.  Supp. Adm. Rule E(4)(f) ("[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.").

For purposes of a Rule E(4)(f) post-arrest hearing, "[s]uperficial compliance with Rule B, while necessary, is not sufficient in determining whether maritime attachment  is appropriate." *Williamson*, 542 F.3d at 52.  Rather, "the attaching party must present sufficient evidence to show probable cause for the attachment." *Diesel Specialists v. M/V Mohawk Transp.,*

---

[2]      Supplemental Rule B provides for a quasi-in-rem proceeding. *Sembawang Shipyard, Ltd. v. Charger, Inc.*, 955 F.2d 983, 987 (5th Cir.1992).  In that instance, although the claim is against a named person, the plaintiff may proceed against the thing when that person cannot be found in the district.  *Id.; see also* Fed. R. Civ. P. Supp. Adm. Rule B(1).

*LLC.*, Civil Action No. 09–2843, 2009 WL 1036085, * 1 (E.D. La. 4/17/09) (Engelhardt, J.);  *see also Naftomar Shipping and Trading Co. v. KMA Intern., S.A.*, Civil Action No. V–11–2, 2011 WL 888951, *3 (S.D. Tex. 3/3/11) (Rainey, J.) ("plaintiff bears the burden to establish probable cause for the arrest") (quoting *A. Coker & Co., LTD. v. Nat'l Shipping Agency Corp., et al.*, Civil Action No. 99–1440, 1999 WL 311941, *1 (E.D. La.5/17/99) (Vance, J.) (internal citations omitted)). Thus, a "district court may certainly vacate the [attachment] if it determines, after hearing from both parties, that the requirements of Rule B have not actually been met." *Williamson,* 542 F.3d at 52.

 A Rule E(4)(f) hearing, however is not intended to definitively resolve the dispute between the parties; instead, the district court makes a preliminary determination of whether reasonable grounds exist for the arrest. *Naftomar Shipping and Trading Co.*, 2011 WL 888951, *3 (quoting *A. Coker & Co., LTD.*, 1999 WL 311941, * 1) (internal citations omitted)).  In other words, with Rule E(4)(f) hearings, courts do not make binding determinations of fact; they "'merely hold[] that it is [or is not] likely' that alleged facts are true." *Id.* at *3 (quoting *Wajilam Exports Pte. Ltd. v. ATL Shipping Ltd.,* 475 F. Supp. 2d 275, 280 (S. D. N.Y. 2006) (internal citations omitted).

 In support of its motion, Pola 5 asserts that it, not Pola Maritime, owns the M/V POLA ONEGA, and that it, Pola 5, has never had a contractual relationship with Plaintiff.  Rather, only Pola Maritime and Plaintiff are parties to the time charter and letter of indemnity on which Plaintiff's arbitration claims are based.  Pola 5 likewise denies that it is the alter ego of Pola Maritime.  Finally, Pola 5 argues that the Pola Maritime indemnity obligation at issue in the London arbitration proceeding is not a maritime contract.  Thus, Pola 5 contends, Plaintiff has not and cannot satisfy Rule B's requirement that it have a "valid prima facie *admiralty* claim" against a defendant who has property within the district.  Based on these assertions, Pola 5 maintains that Plaintiff's

3

attachment of the M/V POLA ONEGA was wrongful, must be vacated, and has caused Pola 5 damages for which Plaintiff should be required to pay.

For many of the reasons urged by Plaintiff in its original and sur-reply memoranda (Rec. Docs. 10 and 28), the Court disagrees, on the present showing made, that vacatur or any award of damages is warranted at this juncture of the proceeding. Contrary to Pola 5's assertions, applicable jurisprudence tends to suggest that the indemnity obligation at issue[3] – undertaken by time charterer Pola Maritime, in accordance with the terms of its June 11, 2015 charter party with Plaintiff,[4] in exchange for Plaintiff agreeing to forego its maritime right, as vessel owner, to require that original Bills of Lading be presented prior to the delivery of cargo – constitutes a maritime contract for purposes of triggering admiralty jurisdiction. *See, e.g.*, *Great E. Shipping Co. v. Binani Cement Ltd.*, 655 F. Supp. 2d 395 (S.D.N.Y. 2009) (Koeltl, J.); *C. Transp. Panamax, Ltd. v. Kremikovtzi Trade E.O.O.D.*, Civil Action No. 07- 893 (LAP), 2008 WL 2546180 (S.D.N.Y. June 19, 2008) (Preska, J.); *see also Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14 (2004); *Kossick v. United Fruit Co.*, 365 U.S. 731 (1961).[5]

Furthermore, it similarly is not presently apparent to the Court that Pola Maritime lacks the ownership interest in M/V POLA ONEGA necessary for a Rule B attachment. In making this determination, the Court first notes that Pola 5 is the wholly owned subsidiary of Pola Maritime[6] and the two entities seemingly share the same telephone number, facsimile number, email address,

---

[3]    See Rec. Doc. 1-3, pp. 30-37 of 44.

[4]    See Rec. Doc. 1-34, pp. 1-29 of 44.

[5]    The Court finds the jurisprudence on which Pola 5 relies to be readily distinguishable.

[6]    See Rec. Doc. 1-3, pp. 41-43 of 44.

and website address.[7]  While these facts considered alone are far from determinative, the Court additionally notes Pola Maritime's apparent claims of ownership of the M/V POLA ONEGA  in its marketing materials and public filings.[8]  And while a formal charter party of the vessel does exist between the two companies,[9] the twenty-four months time charter went into effect almost immediately upon completion of the vessel's construction in June 2014.[10]  Indeed, the signature of Carlo Cepollina, General Manager of Pola Maris, N.V., which is Pola Maritime's exclusive commercial agent, appears on the June 18, 2014 "PROTOCOL OF DELIVERY AND ACCEPTANCE" for the M/V POLA ONEGA.[11]  Thus, although Pola 5 emphasizes its having been "operating in maritime commerce" since delivery of the M/V POLA ONEGA approximately two years ago, to support  the adequacy of its capitalization, that business appears to have been provided exclusively by, and at the expense of,  Pola Maritime, not an unrelated source of revenue.  Finally, although Pola Maritime apparently bears the financial burden associated with the construction financing for several recently built vessels, including the M/V POLA ONEGA,[12] the charter party between it and Pola 5 requires that Pola Maritime pay $9,000 USD per day to Pola 5 for Pola

---

[7]     See Rec. Doc. 1-3, pp. 30-37 of 44; Rec. Doc. 18-1, pp. 74 -79 of 79.

[8]     See Rec. Docs. 28-1, pp. 1-8 of 23, and pp. 11-19 of 23.   Third party information sources also attribute an ownership interest in the M/V POLA ONEGA to Pola Maritime. See Rec. Docs. 28-1, pp. 9-10 of 23. While Pola Maritime contests the reliability of these reports, given their third-party, unofficial sources, there is no indication that Pola Maritime has sought to correct the information reported or that any of the news sources are generally considered in the shipping industry to be unreliable.

[9]     See Rec. Doc. 18-1, pp. 20-72 of 79.

[10]    See Rec. Doc. 18-1, pp. 20-23 of 79.

[11]    See Rec. Doc. 28-1, pp. 20-23 of 23

[12]    See Rec. Doc. 28-1, pp. 11-22 of 23.

Maritime's use of the M/V POLA ONEGA.[13]  Based on these facts, the adequacy and accuracy of both entities' claimed financial wherewithal is unclear to the Court and, presumably, to unaffiliated entities, like Plaintiff, with whom  Pola Maritime does business.  Thus, while discovery  may yield evidence proving that Pola Maritime truly lacks actual ownership of the M/V POLA ONEGA, and that ownership status is not otherwise fairly legally imputed to it, such information is not presently available to the Court.[14]  Accordingly, the Court declines to order that the Rule B attachment of the M/V POLA ONEGA be vacated.

**B.**      **Motion for Jurisdictional Discovery**

Given Pola 5's assertions in its motion for vacatur, Plaintiff asks the Court to allow it to immediately conduct jurisdictional discovery.  More specifically, Plaintiff requests leave to depose certain individuals  and to propound written discovery to Defendants and third parties in the form of document requests, interrogatories, and requests for admissions.[15]  Considering all of the factors discussed herein, the Court will grant Plaintiff's motion to the limited extent that Plaintiff shall be allowed thirty (30) days from the entry date of this Order and Reasons within which to depose the master of the M/V POLA ONEGA, Mr. Anatoly Belozerov, Mr. Carlo Cepollina, and Mr. Karl Mallia.  If logistics necessitate, the depositions are to be done via video conference. Finally, the interrogatories proposed by Plaintiff (Rec. Doc. 19-7) are to be propounded immediately (if Plaintiff still desires their issuance) with a written response being due within thirty (30) days of service by electronic means.  Because the requests for document production and admissions proposed by Plaintiff appear overly broad and burdensome for purposes of this limited and expedited

---

[13]      Pola 5's invoices to Pola Maritime reflect a daily rate of $10,100 USD. See Rec. Doc. 18-1, pp. 74-49 of 79.

[14]      The Court notes that neither party requested that an evidentiary hearing or oral argument be held in connection with their motions.

[15]      See Rec. Doc. 25.

jurisdictional discovery, the Court presently declines to authorize them in their present form.  If Plaintiff persists in believing such additional discovery necessary, on an expedited basis, Plaintiff may seek leave to file from the assigned magistrate judge, who shall also impose appropriate limitations designed to narrow the inquiry and render it less costly and burdensome.

**C.**     **Amicable Resolution Efforts**

As the Court has done previously, the parties and counsel are again urged to confer in good faith to determine whether an agreement can be reached that would both protect Plaintiff and allow the M/V POLA ONEGA to be released and returned to commerce.   In disputes such as these, a bond is often posted as security for the release of the vessel.  Although each party apparently has refused, thus far, to bear the totality of the cost of a bond, the Court strongly urges the parties to promptly consider whether an agreement can be reached relative to sharing those costs and/or having them taxed at the conclusion of the matter

New Orleans, Louisiana, this 11th day of July 2016.

**KURT D. ENGELHARDT**
**United States District Judge**